UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| JAMES R. HOLBERT<br>500 Newton Valley Road<br>New Haven, Kentucky 40051<br><br>PLAINTIFF<br><br>v.<br><br>VITTITOW REFRIGERATION, INC.,<br><br>VITTITOW REFRIGERATION, INC.<br>PROFIT SHARING PLAN,<br><br>JAMES LOWE AS TRUSTEE AND<br>PLAN ADMINISTRATOR OF THE<br>VITTITOW REFRIGERATION, INC.<br>PROFIT-SHARING PLAN<br><br>JAMES LOWE<br><br>CHERI BAIZE<br><br>FINDLEY DAVIES, INC.<br><br>DEFENDANTS | Civil No. 3:20-cv-114-DJH<br><br>Judicial Officer: _____ |

## COMPLAINT

Plaintiff, James R. Holbert (hereinafter, "Plaintiff" or "Mr. Holbert"), hereby files this Employee Retirement Income Security Act of 1974 ("ERISA") action against Vittitow Refrigeration, Inc. (hereinafter, "VRI"), Vittitow Refrigeration, Inc. Profit Sharing Plan, (hereinafter, "Plan"), James Lowe (hereinafter, "Defendant" or "Mr. Lowe"), as Plan Administrator and Trustee, James Lowe, Cheri Baize and Findley Davies, Inc. to assert his causes of action and the payment of damages related thereto.

## FEDERAL QUESTION CAUSES OF ACTION

1. Defendants are indebted to Plaintiff for $111,833.32 because they illegally withheld $111,833.32 of his $555,166.62 December 31, 2016 Vested Plan Amount.

2. To make himself whole, Plaintiff also claims of Defendants: Daily damages of $110.00 as permitted by 29 U.S.C. § (c)(1); equitable damages for attorney's fees and costs as permitted by 29 U.S.C. § 1132 (a)(3) and (c); 29 U.S.C § 1001, *et seq* damages for illegally converting or misappropriating $111,833.32 of his Vested Amount; and U.S.C §§ 1132(a)(3),1104 and 1106 related damages for breach of fiduciary duties.

3. ERISA § 502(a)(1)(B) Denial of Benefits Claims.

4. ERISA § 503 Denial of Benefits Claims.

5. ERISA § 503(a)(2), per se ERISA § 406 fiduciary duty violations and § 503(a)(3) Claims.

## PARTIES TO THIS COMPLAINT

6. Plaintiff's resident address is 500 Newton Valley Road, New Haven Nelson County Kentucky 40051. His cell phone # is 502-349-9955. He does not have an email address.

7. Vittitow Refrigeration, Inc. is a commercial refrigeration entity located at 4603 Poplar Level Road, Louisville Jefferson County, Kentucky 40213. The company phone # is 502-966-4444. There is no company email address.

8. The Plan is an ERISA governed contribution plan as defined by 29 U.S.C. § 1002(34) within the meaning of 29 U.S.C. § 1002(2)(A), and a necessary party to this action. ERISA 29 U.S.C. § 1132(d).

9. Plan Administrator's resident address is 155 Avery Loop, Bardstown Nelson County Kentucky 40004. He is VRI's Owner, President, Plan Administrator and Plan Trustee. Mr. Lowe's phone number is unknown to Plaintiff. His email address is jlowe@vittitow.com.

10. James Lowe's resident address is 155 Avery Loop Bardstown Nelson County Kentucky 40004. Mr. Lowe's phone number is unknown to Plaintiff. His email address is jlowe@vittitow.com.

11. Cheri Baizes' resident address is 1807 Eastern Parkway Louisville, Kentucky 40204 and her business address is 661 Hurstbourne Parkway Louisville, Kentucky 40222. Her phone number is unknown to Plaintiff. Her email address is cheri.baize@vittitow.com.

12. Findley Davies, Inc.'s ("Findley") business address is 11807 Brinley Avenue Louisville Kentucky 40243. The business phone number is 502-244-7828. The email address is unknown to Plaintiff.

## JURISDICTIONAL BASIS

13. The United States District Court for the Western District of Kentucky and the Kentucky Jefferson Circuit Court have concurrent 29 U.S.C. §§ 1132 (a)(1)(B) and (e)(1) jurisdiction of this action because Plaintiff exhausted his administrative remedies in failing to recover from Defendants $111,833.32 of his $555,166.62 December 31, 2016 Vested Plan Amount which the Plan Administrator was required to transfer to him, and failed to obtain information form the Plan Administrator which he was required to disclose.

## VENUE

12. This United States District Court of the Western District of Kentucky is the proper litigation venue according to 29 U.S.C. §1132 (e)(2).

## APPLICATION FOR BENEFITS FACTS

11. VRI was incorporated with the Kentucky Secretary of State on June 29, 1972, and operates its business from 4603 Poplar Level Road, Louisville Jefferson County Kentucky 40213.

12. To establish the Plan, VRI's President Mr. Lowe consulted and contracted with Bryan, Pendleton, Swats & McCallister, LLC ("Consultant") to prepare the January 1, 1983 Defined Contribution Volume Submitter Plan and Trust (hereinafter, "Submitter Plan"), Vittitow Refrigeration, Inc. Profit Sharing Plan Adoption Agreement (hereinafter, "Adoption Agreement"), and Summary Plan Description necessary to establish the Plan.

13. Findley Davies, Inc is a Consultant Member acting on behalf of Consultant in Louisville, Kentucky.

4

14. As sponsoring employer, VRI effectuated the Plan on January 1, 1983.

15. From January 1, 1983 to present date, Mr. Lowe has been the Plan Administrator and Trustee. As such, he is responsible for managing Plan assets pursuant to the vested discretion afforded him by 29 U.S.C. § 1002(1)(A), the Adoption Agreement and Article VIII of the Submitter Plan.

16. After Applications for retirement benefits provided to retirees by Mr. Lowe are received, he, except for factually relevant or applicable legal reasons, is required to timely distribute 100% of each retiring Plan Participant's year end vested amount.

17. Plan Sponsor VRI is, *inter alia,* responsible for monitoring Mr. Lowe to make certain that he responsibly manages the Plan according to the ERISA Code and Plan documents.

18. Mr. Holbert was a VRI employee from June 29, 1972 to November 25, 2016, and a Plan Participant from January 1, 1983 to November 25, 2016.

19. After Mr. Lowe informed Plaintiff before November 25, 2016 that he was required to retire on November 25th and would help him draw his pension, Mr. Lowe was required, pursuant to Section 8.4 of the Summary Plan Description, to provide Mr. Holbert with copies of VRI's Application for Benefits, Vittitow Refrigeration's one-page Profit Sharing Plan Methods of Payment Explanation, and one-page Plan Payment Tax Notice before the post December 31, 2016, March 3, 2017 deadline. The last two of which Mr. Lowe did not provide.

20. Attached as **Exhibit A** is a copy of Plaintiff's, "Vittitow Refrigeration, Inc. Profit Sharing Plan for the period 01/01/16 through 12/31/16", which reflects a Vested Amount of $555,166.62 which was mailed to him shortly after.

21. After Plaintiff received a three-page Vittitow Refrigeration, Inc. Profit Sharing Plan Application for Benefits, a copy of which is attached as **Exhibit B,** on August 7, 2017, he signed and dated page two on August 8, 2017 and mailed it to Mr. Lowe.

22. Page 1 of Exhibit B has two sections. Section II is the Benefit Determination Section which is comprised of, "Completed Years of Vesting Service" and "Vested Percentage" subsections. "42 years" and "100%" were written in the appropriate page 1 Section II subsections.

23. "$555,166.62" was written to the right of the Section II Employer Account Balance, Employer Account Vested Balance, Total Distribution Payable, Total Distribution Payable and Ordinary Income Portion page 1, line items.

24. To the right side of Section II, appeared the following written mathematical calculations and wording:

| | |
|---|---|
| $559,166.62 | Distribution |
| $111,833.32 | 20% Federal withholding tax |
| $447,330.30 | After tax distribution |

25. Two payment options appear on page 2, Section III of Exhibit B: "PAYMENT TO ME" and "DIRECT ROLLOVER." Each of the two small squares to the right of the "Payment to Me" subpart border an "x". Mr. Lowe never consulted with or advised Plaintiff about his options, nor did Plaintiff inform anyone that he wanted taxes deducted from his Vested Amount.

26. After signing and dating page 2 of Exhibit B on "8-8-2017", Plaintiff phoned Mr. Lowe after mailing the Application to him and informed him that it was not his

intention to withhold $111,833.32 for Federal taxes, but instead to transfer the money to his Town and Country Bank (hereinafter, "Bank") IRA account.

27. Mr. Lowe then voided Exhibit B by writing, "VOID Ronald wants to Roll to his ACC" on page 1 of Exhibit B and affixed this, "Town and Country Bank FBO James Ronald Holbert Acct # ___-__-5346 Traditional IRA." note to page 2 and told Plaintiff to visit the VRI office to sign another Application.

28. Upon Plaintiff's September 27, 2017 arrival, Mr. Lowe's secretary informed him that Mr. Lowe was not present and handed him a different Application, a copy of which is attached as **Exhibit C,** opened to page 2 which in each small square to either side of the words, "Direct Rollover" appeared a "√", and this adjacent note, "Town & Country Bank FBO James Ronald Holbert Acct # ___-__-5346 Traditional IRA." At no time did the secretary: Show Plaintiff page 1; give him an Exhibit B copy which Mr. Lowe signed and dated "9-28-17"; or inform him that page 1 of Exhibit C differed from page 1 of Exhibit B in that "$447,277.38" had been written to the right of the "Employer Account Balance", " Employer Account Vested Balance", "Total Distribution Payable", "Total Distribution Payable" and "Ordinary Income Portion" page 1 line items. The page 1, "100%" "Vested Percentage" entry was consistent with Exhibit B.

29. Plaintiff did not read page 1 of Exhibit C on September 27, 2017 because: He knew that Mr. Lowe had voided Exhibit B and ordered the Bank transfer; his secretary only revealed page 2; he had no reason to believe that less than $555,166.62 would be transferred to his Bank account.

30. On or about September 28, 2017, a $447,277.38 Vittitow Refrigeration Inc. Profit Sharing Plan check, a copy of which is attached as **Exhibit D**, dated 9/28/17 made payable to, "Town and Country Bank FBO James R. Holbert" was mailed to the Bank and deposited into Plaintiff's IRA account.

31. When the Bank informed Plaintiff about the lesser valued check, he undertook the proper procedures in challenging and appealing the Plan Administrator's decisions to deny him full payment and the requested Information.

32. In October or November 2017, Mr. Lowe appeared unannounced at Plaintiff's residence and informed him, in the presence of Plaintiff's friend, that, "He had another check coming for his profit share." Shortly thereafter, Mr. Lowe asked Mr. Holbert to manage an expensive VRI job for which Mr. Lowe paid him with his personal check. Plaintiff rejected a subsequent Mr. Lowe offer to manage another VRI job because Mr. Lowe did not send him a second check and would not provide a company truck.

33. Plaintiff's representative Charles Whelan mailed his letter dated July 6, 2018, a copy of which is attached as **Exhibit E**, to Mr. Lowe on July 6, 2018 explaining why Plaintiff should be paid $111,833.32. In response, Mr. Lowe mailed Mr. Whelan his July 11, 2018 letter, a copy of which is attached as **Exhibit F,** explaining why he withheld the money and a Stock Yard Bancorp, Inc. time and money graph, a copy of which is attached as **Exhibit G,** which he claimed was utilized by him, Ms. Maize, Findley and its employee, Sarah Barnes, on August 8, 2017 to recalculate Plaintiff's Vested Amount. Exhibit E reads, "He (Mr. Holbert) made an application for benefits from his Plan money on August 8, 2017. Vittitow

Refrigeration made a recalculation of the Plan as of August 8, 2017. The recalculations were made by VRI's CPA-Controller Cheri Baize and reviewed by Consultant's employee Sarah Barnes."

34. Because Subparagraph 42. (a) of Article VIII, Valuation of Trust (8.02(C)(4) reflects Mr. Lowe's decisions regarding these four additional option Valuation Dates: "(a) [X] No additional Valuation Dates."; "(b) [ ] Daily Valuation Dates"; "(c) [ ] Last day of a specified period"; "[ ] Specified Valuation Dates", his August 8, 2017 reevaluation attempt was flawed, meritless, unauthorized, misleading and illegal because the only permissible date was December 31, 2016.

35. Article VII of the Adoption Agreement is titled, "Administrative Provisions." Subsection 7.01 is titled, "Employer Administrator Provisions." Plan Administration Subsection 7.02 explains the Plan Administrator's responsibilities and subsection (C)(4) thereof authorizes the Plan Administrator, "To direct the Trustee regarding the crediting and distribution of the Trust Fund, to establish additional Valuation dates, and to direct the Trustee to conduct interim valuations on such dates under Section 8.02(C)(4)" which in part reads, "If the Trustee is a discretionary Trustee, to value the Trust Fund as of each Accounting Date and as applicable, the value of the Trust Assets within each Participant or Beneficiary account. The Trustee also must value the Trust Account on such other Valuation Dates as directed in writing by the Plan Administrator or as the Adoption Agreement may require." The only authorized valuation date is December 31st of each year.

36. After receiving Exhibit B from Plaintiff on August 8, 2017, Mr. Lowe claims that he, Ms. Barnes and Ms. Baize complied with the Plan's due diligence valuation requirements by compiling the necessary information to reevaluate Mr. Holbert's December 31, 2016 Vested Amount. The valuation Information provided was the graph and some prior non-relevant valuations of Plaintiff's Vested Amount.
37. Because the Stock Yard Bancorp, Inc. graph was prepared in July 30, 2018, it could not have been utilized by Mr. Lowe, Ms. Maize and Ms. Barnes on August 8, 2017 to recalculate Mr. Holbert's Vested Amount.
38. Not even an in-depth good faith market analysis would have resulted in a reduced valuation equal to a 20% tax.
39. Plaintiff's VRI 2017 1099-R form, a copy is attached as **Exhibit H,** reflects entries of, "$447,277.38" in the "Gross Distribution" and "Taxable Amount" sections, and nothing in the "Federal taxes withheld" section.
40. Mr. Lowe, Ms. Baize and Findley are guilty of conspiring to defraud Mr. Holbert of $111,833.32.

### EXHAUSTION OF ADMINISTRAIVE REMEDIES S

41. Because the Plan Administrator did not pay Plaintiff the Vested Amount Balance after being contacted by Mr. Whelan, Plaintiff authorized the mailing of a May 1, 2019 letter, a copy of which is attached as **Exhibit I,** addressed to Mr. Lowe requesting information, documentation and explanation (hereinafter, "Information") which he was obligated to provide pursuant to Plan Administration Section 13.4 of the Summary Plan Description; which wording begins with, "The plan

administrator (Mr. Lowe) has established the following procedures for filing of claims for benefits." The following requests are Section 13.4 subparts.

   a. "Explain the specific reason for denying Plaintiff his remaining benefit and a copy of the Plan section on which the denial is based.

   b. Send copies of your $447,333.30 "recalculation" work papers.

   c. Describe any other information necessary for the claim to be granted and explain why the information is necessary.

   d. Send me a description of the Plan's claim review procedure and a statement regarding the Claimant's right to bring a civil action under ERISA Section 502(a) for filing a benefit.

   e. Send me a letter pursuant to U.S. ERISA Code Section 502(a) explaining Plaintiff's right to file a United States ERISA Code Section 502(a) civil lawsuit in Federal Court against the Plan, you as Trustee and Plan Administrator and Vittitow for denying Mr. Hobert entirety of his Benefit.

   f. Send me a "Statement" that Claimant Mr. Hobert will lose his right to sue the Plan, you as Trustee and Plan Administrator and Vittitow if he fails to timely appeal your decision to deny him his total Benefit." The Section 13.4 90-day information deadline was July 30, 2019. A June 11, 2017 reminder letter was also mailed to Mr. Lowe.

42. Mr. Lowe did not respond by any method of communication to either the May 1st or June 11th letters before July 30, 2019. But he did in July before July 30. 2017 personally deliver to Plaintiff's attorney a file ("File") of documents, including an email series from May 7, 2018 to September 14, 2018 between Ms. Baize and

Ms. Barnes, pertaining mostly to the August 2017 special allocation process of recalculating Mr. Holbert's Vested Amount Value. Within the series are twenty-six, "Quoted text hidden" entries which most likely pertain to Plaintiff.

43. A Ms. Barnes September 18, 2017 reads, "Either you should document a resolution as to why you are calling for this special allocation or we can draft it for you." The file did not contain any resolutions.

44. In a September 12, 2018 email to Ms. Barnes, Ms. Baize mistakenly claims that, "The employee requested his funds mid-August 2017." It was Mr. Lowe who belatedly waited until early August to mail Exhibit B to Mr. Holbert. She also writes that, "Certificates were handed out in late July or early August 2017." She must have meant Applications. She then corrects herself by writing that she didn't think there were other applications and refers to Plaintiff as the, "sole Participant making a request." She then reflects that, "If we had not done the revaluation..." and, "If you had not done the revaluation, he would have gotten his 12/31/16 value.", which was $555,166.62.

45. Mr. Lowe's refusal to provide Plaintiff with the CPA's recalculations and the numerical paragraph 41. a. through f. Information was a constructive denial to provide the Information which resulted in the exhaustion of Mr. Holbert's administrative remedies and a breach of his fiduciary duties.

## PLAN SPONSER AND FIDUCIARY DUTY FACTS

46. Because VRI failed to require the Plan Administrator to rollover the entirety of Plaintiff's Vested Amount, VRI and the Plan are jointly liable to Plaintiff and each other for all awarded damages.

47. Because the Plan Administrator breached his fiduciary duties, was not authorized to withhold the Vested Amount Balance and requested Information, and because VRI did not prevent Mr. Lowe from withholding $111,833.32 of Plaintiff's money, the Plan administrator and VRI are jointly indebted to Plaintiff for breach of fiduciary damages.

## CAUSES OF ACTION

48. Plaintiff realleges the allegations of the preceding numerical paragraphs as if fully set forth herein. Each cause of action incorporates the averments of each preceding cause of action.

49. In bad faith, Defendants jointly and deliberately embarked on an illegal course of conduct of deception, oppression and unfair dealing by, *inter alia*:

    a. Preparing Exhibits B, C and G in such a way as to deprive Plaintiff of $111,833.32.

    b. Devaluing Plaintiff's Vested Amount on August 8, 2017 without authority or economic grounds to do so.

    c. Treating Plaintiff unfairly and differently than other VRI Plan participants.

    d. Misappropriating and converting $111,832.33 of Plaintiff's Vested Amount.

    e. Utilizing Exhibit F to unjustly reduce his Vested Amount.

    f. Breaching their fiduciary duties of good faith and fair dealing.

    g. Refusing to provide Plaintiff with the Information.

## FIRST CAUSE OF ACTION

50. This is an ERISA Code § 502(a)(1)(B) claim to recover compensatory damages of $111,833.32.

51. Considering the heretofore averred facts, Defendants are indebted to Plaintiff for compensatory damages of $111,833.32.

52. Because Plan Sponsor VRI failed to require Mr. Lowe to timely transfer Plaintiff's Vested Amount and provide the Information and monitor his Application for Benefits procedures, VRI and the Plan are likewise jointly liable to Plaintiff for $111,833.32 and other claimed damages.

## SECOND CAUSE OF ACTION

53. This is a 29 U.S.C.1132 damages claim against VRI, the Plan and Plan Administrator for not complying with the information requirements of 29 U.S.C.§1132. 61.Because Mr. Lowe and VRI failed to provide the Information requested in the May 1, 2109 letter, explain why the Information was not provided or inform Plaintiff of his related procedural and appellate rights, Plaintiff is entitled to 29 U.S.C. §1132(c)(1) relief consistent with 29 U.S.C. § 1132(a)(3). He therefore requests a Judgment award of $110 per day beginning July 30, 2019 to the eventual ending date.

## THIRD CAUSE OF ACTION

54. This is 29 U.S.C. 1001 claim to recover damages for the conversion and Plaintiff realleges the allegations of the preceding numerical paragraphs as if fully set forth herein misappropriation of Plaintiff's $111,833.32 Vested Account Balance.

55. As heretofore alleged, in August 2017 Mr. Lowe initiated a course of oppression and unfair dealing by misappropriating and converting $111,833.32 of Plaintiff's Vested Amount by illegally exercising dominion and control of his legal and possessory rights therein which they denied him of.

56. Defendants are therefore liable to Plaintiff for Code related permissible damages for conversion.

## FOURTH CAUSE OF ACTION

57. This is a breach of fiduciary claim against the Plan Administrator and Trustee pursuant to 29 U.S.C. §§ 409, 1132(a)(3), 1104 and 1106.

58. Mr. Lowe and VRI were dutifully and ethically obligated to administer the Plan as required in equal measure for all Plan Participants which they intentionally failed to do for Plaintiff.

59. "A fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries" and "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104 (a)(1)(D), which Plan Administrator-Trustee failed to do.

60. "A fiduciary shall not deal with the assets of the plan in his own interest or for his own account." 29 U.S.C. § 1106(b)(1). Plan Administrator-Trustee Mr. Lowe did exactly that with Plaintiff's $111,833.32.

61. Mr. Lowe is therefore liable to Plaintiff for Code related permissible damages for intentionally violating his fiduciary duties with respect to Plaintiff.

WHEREFORE, Plaintiff requests the following relief.

    a. An ERISA 29 U.S.C. § 1132 $111, 833.32 compensatory damages award.

b. An ERISA 29 U.S.C § 1132 (c)(1) $110.00 per day damages award from July 30, 2107 to a yet undetermined date.

c. An ERISA 29 U.S.C. § 1132(a)(3)(c) attorney's fee and cost award.

d. ERISA damage awards related to Causes of Action three and four.

e. ERISA Code § 502(a)(1)(B) damages for denial of benefits.

f. ERISA Code § 503(a)(2)(3) damages for denial of benefits.

g. ERISA Code § 406 per se related damages for breach of fiduciary duties.

h. Additional damages to make Plaintiff whole.

i. Pre and post interest awards.

j. Procedural relief to file additional pleadings.

Respectfully submitted,

By: /s/ Stephen Schwager
Stephen Schwager, PLLC
6010 Brownsboro Park Blvd. Suite H
Louisville, Kentucky 40207
502- 582-2581
steve@spclaw.net
Attorney for James R Holbert
Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.
/s/ Stephen Schwager   February 12, 2020
Stephen Schwager            Date